Good morning. May it please the Court, my name is Amanda Ulrich and I represent the Plaintiff Appellant Tommy Shane Boden in this matter and I would like to reserve 5 minutes for rebuttal please. Alright, thank you Counsel. Thank you. This case has something that most employment cases don't have, direct evidence. We have direct comments from Jeremy Jensen who terminated Mr. Boden to third parties that he terminated Mr. Boden because he was too old and that they had found someone younger and eager. Here, the District Court committed multiple errors of law and application of law including disregarding direct evidence and granting defendants motion for summary judgment. In the interest of time, I'll try to hit some of the more important issues in this case. Perhaps the most glaring error was the District Court's dismissal of plaintiff's ADEA claim given the direct evidence that plaintiff had. Now first, with direct evidence on summary judgment, the McDonnell-Douglas framework doesn't apply so there was no need to even go there. Additionally, even if the same act or inference did apply, which as I'll get into later does not, it's defeated with direct evidence or statements demonstrating a discriminatory animus. And here, the ADEA claim did not need to go any further than Jensen's comments made to Daryl Kerr and Trevor Davey that he fired Boden because he was, quote, too old and because he'd found someone, quote, younger and eager. So on that basis alone, it was error to grant summary judgment on plaintiff's ADEA claim. Additional error by the District Court on the ADEA claim was the application of the same actor inference to defeat Boden's age claim. Under Coburn, where there are multiple decision makers involved in a hiring and firing decision, the same actor inference does not apply. There's evidence in the record, even in the absence of Mr. Boden's declaration, that Mr. Larkin was either the decision maker in hiring Mr. Boden or that Mr. Jensen had given his approval to hire Boden and that Mr. Larkin had the final say in hiring him. That evidence is found in both Mr. Boden's deposition at 2 ER 235 through 36 and Mr. Jensen's 30B6 testimony, which is found at 4 ER 491. Additionally, the hiring and firing occurred more than two years apart, and there was evidence of age bias that developed in between the time of hiring and firing in the form of Mr. Jensen's comments to Mr. Kerr and Mr. Davey. So, additionally, on that basis as well, it was error to apply the same actor inference. Further, the District Court committed error by applying a totality of the circumstances standard. Even applying the McDonnell-Douglas burden shifting standard in this case, the court erred. It's certainly not the but-for standard. That applies at trial. Now, again, because we did not need to undergo the burden shifting process because of the direct evidence, we think it was error. But when the court did apply that burden shifting process, it erred in finding the plaintiff could not even make a prima facie case. So, the court found that Mr. Boden met the first and third elements, that he was at least 40 years old and that he was discharged. The court also found that Mr. Boden met the second element, that he was performing his job satisfactorily, which in and of itself demonstrates defendant's reason for terminating plaintiff was pretextual. But more importantly, it erred when finding Mr. Boden was not replaced by a substantially younger employee with equal or inferior qualifications or that it discharged him under circumstances otherwise giving rise to an inference of discrimination. And in that fourth prong, there was an additional error made when the court applied a non-existent standard when looking at whether Baker would qualify as that younger employee under the fourth element. Instead of applying a standard of Baker replacing Mr. Boden and taking over his job duties, it applied a standard that Mr. Baker would have had to have been hired, it seems, at or near the time Mr. Boden was terminated in order to meet that fourth element. And that simply is not the law. In fact, if you look at the Diaz case, which also provides sort of those prima facie case elements, that case pertains to layoffs and job duties of laid off older employees being transferred to already employed younger employees. So quite simply, the standard is replacement, not hiring. Additionally, it was clear that Mr. Baker was Mr. Boden's replacement. He was given Mr. Boden's clients, including the Ryrie Church Farm. And in fact, Mr. Jensen admitted in his own declaration that when he referenced the younger employee to Mr. Kerr, that it was Mr. Baker he was talking about. And that can be found in the record at 2 ER 205. Further, there's no question that Mr. Baker had no experience as a crop consultant and that he was far younger and less qualified than Mr. Boden. So certainly the prima facie case should have been met. And additionally, the court erred when relying on statistical analysis in saying that claim would be dismissed. This is a disparate treatment, not a disparate impact case. And under Bostick, that requires an individual analysis, not the statistical analysis the court relied upon. So we would submit that the court erred in granting summary judgment on Mr. Boden's ADA case. Additionally, the court made multiple errors in dismissing plaintiff's ADA claim. And the most obvious error was finding that plaintiff could not make a prima facie case of discrimination and in particular that plaintiff did not have a disability. The court held that plaintiff provided no evidence that he was not that he was disabled beyond his own statements. And the court also held that Mr. Boden was not disabled because he was released without restrictions in July 2016 and again in September 2016. Now as to the first issue where the court found Mr. Boden provided no evidence that he was disabled beyond his own statements, that's just simply incorrect. There are multiple pages of medical records in the record showing that his SI joint sprain either exacerbated or revealed his degenerative spinal impairments. Those records can be found at 4 ER 410 through 417. And additionally, not only did Mr. Boden provide testimony as to how those spinal impairments interfered with his ability to stand, fit, sleep, lift, lift his leg, run and made it difficult for him to get in and out of his work vehicle. His physician's notes as well indicated that he was substantially limited in those sorts of activities. He talks about difficulty standing, noting his right leg can get out, those sorts of things. And that is found in the record at 4 ER 410. And additionally, he did submit workplace restrictions. In fact, he had a request for accommodation that was sent in from the treatment provider asking that he avoid workplace activities that aggravate his back and his leg. But was there evidence of, you know, that there were substantial limits to major life activities? It seems like there were medical records that showed some of the ailments and there was some evidence of it may limit a few things. It's harder to, you know, get into the truck, etc. But, you know, for an ADA claim, you have to show that there's a substantial limit to life activity. And I don't know if that was there, at least in the record that I could see. So, Your Honor, I do believe it's there. Standing is a major life activity. Lifting is a major life activity. Sleeping is a major life activity. And certainly there's testimony from Mr. Bowden in his declaration outlining the difficulties he had with those things. There's also testimony in his deposition about how those interfered with his day-to-day life and functioning. And certainly I would think that if your right leg can give out, that you have a substantial limitation in your ability to stand. You mentioned before the release from the doctor. Just in terms of the employer's awareness that Mr. Bowden had a disability, as the law defines that, isn't the fact that the doctor said that he could return to work with no limitation, isn't that pretty significant? That tells the employer he's not disabled, right? Actually, I don't think so. And the reason why is that if it's for a failure to accommodate case and he was fully released and then claimed that they didn't accommodate him, that's one thing. But this is a disparate treatment case. And here the employer was well aware of his ongoing treatment, his ongoing medical appointments. There were days he missed work to go get injections. That goes back to Judge Lee's distinction between having medical ailments and injuries and having a disability, though. Awareness that a person has back trouble, even bad back trouble, isn't the same thing as awareness that they have a disability, right? Well, I think that there's a difference in this case because the medical records actually that were sent from the medical providers to the employer, to Mr. Jensen and to Mr. Eames, specifically talk about this specific spinal impairment and all of the issues that Mr. Bowden was having. And those are actually the documents transmitted to the employer at 4 ER 425 and 45. And I think those are pretty clear as far as communicating the significance of these issues Mr. Bowden was having and that they did substantially limit his ability to perform major life activities. Additionally, the court erred in not finding a link between the disability and the adverse actions taken against Mr. Bowden. And there's certainly a long list of actions that occurred after they became aware of his disability. There was certainly a lot of antagonism exhibited as well. When Mr. Bowden reported the fall, Mr. Eames failed to report it, which is against company policy. When Mr. Bowden asked for medical treatment, Mr. Eames refused to fill out the paperwork. Mr. Jensen told Mr. Bowden he knew better than that. When Mr. Bowden asked for medical attention, Mr. Eames was going around telling other people that he tries to fire that son of a bitch every day. Mr. Jensen raised Mr. Bowden's sales goal to $250,000 after Mr. Bowden requested treatment and then raised it to $300,000 later in the summer. He wouldn't allow Mr. Bowden to go on a trip he won for being a top salesman. Mr. Jensen decided to fire Mr. Bowden at the end of August 2016 when Mr. Bowden would have still had four months to meet his sales goals. He held off and then fired him at the beginning of October when he still had three months left and he refused to tell Mr. Bowden what his numbers were or what number he didn't meet even though Mr. Bowden still had three months left to meet his sales goal. Mr. Bowden actually surpassed his written sales goal of $200,000 for that year despite being terminated three months before the end of the year. And he was certainly not the lowest performing employee in Mr. Jensen's division despite Mr. Jensen making that representation to HR. Those numbers are all found in Volume 5 of the record. And I think importantly the court relied upon and accepted those facts as it related to Mr. Bowden's workers' comp retaliation claim but did not accept those facts in the case of the disability claim. And that was error. If those facts apply in that instance, they would also apply here because those two things are so inextricably intertwined. I see that I'm past the time I saved for my rebuttal. So I would like to reserve the rest of my time. I have a quick question back on the ADA claim and on the same actor inference. So you talked about it being a two-year differential between the hiring and the firing. Does this court's case set any kind of a cutoff date or at least a cutoff date that's shorter than the interval that exists here for application of that inference? Yes, it does. It's in the Coburn case. And in Coburn, they talk about it being a two-year interval. But in fact, Mr. Bowden, it was more about two and a half years. So I think in this case, it would have been inappropriate given that time frame to apply the same actor inference. Thank you. Thank you, counsel. Good morning, Your Honors. Yes. Thank you, Judge. Good morning, Your Honors. May it please the court. Patricia Kipnis on behalf of Respondent Nutrien, Ag Solutions, Incorporated. The district court correctly found that there was no genuine dispute of fact with respect to either the age or disability discrimination claims below. I want to start by noting that both the disability and age discrimination claims require under Blackletter law in the circuit that the plaintiff prove that the disability or age is the but-for cause of the adverse employment action. And here, the plaintiff set out to prove that each of those factors, the age and the disability, was the but-for cause, which is difficult to do and has led them to be in this position. And, of course, we would assert that neither is the but-for cause that has left them in this awkward position. I think Judge Kennelly and Judge Lee both picked up on this issue of did Nutrien understand the plaintiff to have a disability? And that goes to both the first and the third prongs of the disability claim. First, did he have a disability? And, of course, we would say that, no, he doesn't meet that first prima facie element. He didn't have a disability primarily because there were no workplace restrictions in effect. And that's really borne out by the case law over and over both this court and the district courts in the Ninth Circuit. Kind of defer to healthcare professionals who look at the medical records, look at the assessments of plaintiffs in these claims and say, well, if these doctors, these healthcare professionals have said that there's no workplace restrictions in effect, we're going to kind of defer to that as a finding of whether there's a disability or not. And we cited, I think, a real long string cite to that effect, which plaintiff kind of struggled to distinguish in their reply. And that has kind of led to, it's not black letter law, but it tends to be whether there's a disability finding. But then, more importantly, even if there was a genuine issue of fact as to whether there's a disability on that first prong of the prima facie case, where plaintiff's case really falls apart is proximate cause. Because as your honors both pointed out, I think, Nutrien simply was not aware the plaintiff believes himself to have a disability. There is no evidence in the record the plaintiff ever showed up at work and said that he was struggling, that he was struggling to do his job, that he was in pain. He testified himself. They didn't care. They didn't ask. They didn't know. I never said I needed help. I never said I needed an accommodation. So there's simply no nexus there, let alone this really high standard of proximate cause on the disability claim. Can you address the ADA claim, especially the remarks here? I mean, if Jensen had just said, allegedly said, you know, Bowdoin was, excuse me, Baker was young and eager, you know, maybe that's a stray remark. But here in the record, at least Kerr claims that Jensen said that Bowdoin was, quote, too old. Can you address that? I mean, why isn't that direct evidence? You know, and then let the jury decide on that issue. I think what the, and again, we were looking, the district court acknowledged it had to be the but-for cause. So their burden was to produce a piece of direct evidence that was the but-for cause. So at the end of the day, the district court said, okay, and it literally was the two comments. Okay, so it was the too old, and then another reference to another customer. Okay, I've got this other guy who's younger than your prior salesman. So the district court looked at what Kerr said, and he took it in full context, right? So he said, okay, Baker, Bowdoin, the plaintiff himself does not recall that this was said. So what? And then, of course, Jensen. Somebody else does. That's a conflict in the evidence. That's correct. It's correct, yes. So we had three people in the room, and two didn't recall it. One said, I think the court just said this is a genuine, is there a genuine dispute of material fact? Is this enough to meet the burden of a but-for cause of discrimination? You're not meeting the burden. Excuse me, counsel. You're not meeting the burden of but-for cause. You're meeting the burden of whether or not a material issue of fact has been raised. Correct. And I think that's why, Your Honor, the court then acknowledged that it was then required to go on to the next two stages of the McDonnell-Douglas test, and it did so. And it said that even if it acknowledged that the plaintiff had met its prima facie case there, that there was really no question that Nutrien had come forward with a legitimate, non-discriminatory reason. But burden shifting doesn't even apply when there's direct evidence. I mean, in other words, if the employer comes out and says, I fired this guy because he was too old, burden shifting doesn't apply. You don't even get to the rest of the analysis. Right? Right. I think that the court was just foreshadowing that, but also just felt that it didn't need to go there. The court looked at all of the evidence here and didn't feel that with everything it met the direct message. But that's the wrong analysis. That's the wrong analysis if you continue with the McDonnell-Douglas burden shifting in the face of direct evidence of discrimination. So why wasn't that sufficient error for us to send it back on an issue of material fact being raised? Because I think the court found that inconsistent with all of the case law in this court that a stray remark, and it was a two-word stray remark that was inconsistent with all of the evidence in the record, was not enough. A stray remark is just a label. It's another way of saying that it isn't relevant. And I mean the cases about stray remarks are about comments where there's no connection between the ageist or racist or whatever comment and the decision. And here, at least according to Mr. Kerr's testimony, the decision maker himself drew the link. We let him go because he was too old. So how can that possibly be a stray remark? I think the court just saw that evidence in the light of all the evidence. Okay. We know the court said that, but why should we accept that as a correct ruling? The court just didn't think that it met the burden. I'm sorry. We're not asking you what the court thought. We're asking you to persuade us that the court's ruling was correct. So is your best argument that the court did it, so it must be correct? No, Your Honor. I think that it was consistent with the other stray remarks. If we disagree with you regarding whether or not this was a stray remark, do you lose? No, because I don't think it was direct. No, Your Honor. I just don't think it had to have been about four causes of discrimination. I'm sorry. I don't know how to frame it another way. And, I mean, they also did not make the argument about McDonnell Douglas not being appropriate at the summary judgment. Well, that's a matter of law. Yeah. That's a matter of law. So they wouldn't necessarily have to make that argument for us to be able to correct an error of law. Because we're reviewing de novo. Right. I think it's also appropriate to look that they did argue at the same time that both of those factors, the disability and age, were the but-for causes. And it's appropriate to look at whether you can have two but-for causes at the same time, whether that's logically consistent. That's often a great argument at trial. But, I mean, we're talking about, as Judge Rawlinson said, we're talking about whether this is a genuine issue of material fact here and whether the jury should have to sort it out. I mean, the fact that the plaintiff gives you two possibilities, two possibilities for why the decision might be illegal, isn't it? There's no case that says that's a ground for granting summary judgment. At least not that I know of. Can I ask you a question about the same-actor thing? I asked your colleague this question. Are there cases that give a cutoff date if it's more than X between the hiring and firing that it's too long? This court in the Coughlin case, the Ninth Circuit in 2012, in the Coughlin case, said three years was appropriate. You said Cochran? Cochran, it's C-O-G-H-L-I-N in 2012. And there are a lot of cases. I mean, the same-actor inference is a fact-intensive inference. And also, the multiple-actor aspect of that, too, is a little bit fact-intensive. I think it's hard to say whether multiple actors versus one actor. It's hard to say in a workplace. It's rare that one person makes a hiring or firing decision without ever speaking to one other person in the workplace, which is what we would kind of say happened here, that it was primarily Jensen's decision to hire plaintiffs. And, obviously, a conversation happened with Larkin, but that's not dispositive of the inference. Counsel, do you agree with opposing counsel that if there is direct evidence of discrimination, it can overcome the same-actor inference? No. Well, no, I think the inference overcomes the direct evidence. So tell me the case you're relying upon to support the position that the same-actor inference trumps direct evidence of discrimination. I think it would be the case that the district court used below, although it used it at the McDonnell-Douglas stage. Well, McDonnell, let's assume McDonnell-Douglas is out of the picture. So tell me a case that stands for the proposition that the same-actor inference carries more weight than the direct evidence of discrimination. Well, Your Honor, I think we've gotten lost in the suggestion that if there's ever any direct evidence of discrimination, it has to go to a jury. And that's where I probably made a mistake here, conceding that on the age discrimination claim. Okay, so if that was an error to concede that, tell me the case that you're relying upon to support the position that you're relying upon to say that was an error. Well, just because there's some scintilla of direct evidence doesn't mean that there's no genuine, you know, that there's a genuine issue of fact that means it needs to go to a jury. I mean, the judge does have some discretion to look at the evidence before him or her and make a decision there. In the summary judgment context, the judge cannot weigh the evidence. Right, but the judge is allowed to look and say, this is only a scintilla of evidence, and there's no genuine dispute of fact here, right? The judge can say – But did the judge do that? Did the judge do that in this case? I think the judge did here. I think the judge looked at all of the evidence before him, including the same-actor inference, and decided that there was this stray remark, and I understand we disagree about whether it was in fact a stray remark, and decided that that didn't meet the standard to go to trial. And the same-actor inference was obviously part of the judge's decision-making here. Right, so if we disagree with the judge that this was a stray remark, then your reliance on the district court judge's decision is no longer valid. Is that correct? No, because I think there's also a lot of other things to be read into the record in Nutrien's benefit, that there was no discrimination here. And that would be all of the things that we talked about in our briefing and that's in the record, that there was a decidedly age-diverse workforce here, that the person who replaced Bowdoin was the same age, was 56 years old, and when Bowdoin was hired he was 58, that many of the people were over 50, were over 40, and so forth, that there was no evidence in the record that other people were discriminated against, that there was no but-for cause, and so forth. There were a lot of things that the judge was looking at here. And I just wanted to note a lot of the facts that are recited kind of in a kitchen sink approach in the briefing and that are recited again by counsel here today were thoroughly rebutted, things about why he didn't get to go on a field trip, why he didn't get to use his commercial driver's license, that there were other people who may have been treated differently. All of these have been thoroughly rebutted and have been used time and time again. And again, most of the facts that have been pointed to, such as the timing of when he filed his worker's comp form and when his sales goals were changes, were addressed by the fact that the district court did deny summary judgment on the retaliation claim and don't really go to the age discrimination claim or the disability claim. So those aren't really before the court here. So if there's no further questions, I just ask the court to affirm the district court's grant to summary judgment on these claims. All right. Thank you, counsel. Rebuttal. Thank you. Thank you, Your Honor. The first thing that I'd like to quickly address is that there is no but-for standard on summary judgment, and that's clear from the Shelley v. Green case. Additionally, the argument that there can't be more than one but-for cause, I think now has been clarified in the Bostic case by Justice Gorsuch, where he says there can be more than one but-for cause. So I think that argument is misplaced, especially on summary judgment. Additionally, I think the argument about Mr. Bowden being released from restrictions, being an indicator that he doesn't have a disability, is wrong, even under the basic definition of the ADA, where the second element is that the plaintiff has to be a qualified individual who can perform the essential functions of his job with or without accommodation. Here at this point, because Mr. Bowden had received treatment in the form of injections and other things, he didn't need an accommodation at work any longer, but he was still disabled. Did he ever request an accommodation at work? He did. He did. And in fact, there's correspondence from, I believe, Mountain View Hospital to his supervisor and to HR saying that he needed these restrictions. I think it's first in May and then possibly June, if I remember right, of he had to avoid activities that would aggravate his back and his leg issues. So he did request an accommodation, in fact, which is also counter to what the district court found. And then quickly, I just wanted to address- Before we leave that, where in the record can we go to verify that he in fact requested, he himself requested an accommodation from his employer? Absolutely. So if you look at all of that paperwork sent from the medical provider- No, I'm not asking about the medical paperwork. I'm asking you where in the record Mr. Bowden himself requested an accommodation from his employer. There's no written paperwork or anything like that to demonstrate he personally requested it, but I don't think that's the standard under the ADA. He was in the middle of a workers' comp claim, and so the duty of informing the employer of his restrictions fell to the hospital because they were required to keep the employer appraised of the situation. Well, as Judge Lee mentioned, just because you have restrictions doesn't mean that you're disabled and require an accommodation. So that's why I was asking you the precise question as to when and how he specifically requested an accommodation for a disability as opposed to for an impairment. Sure. So I think under the ADA, number one, as I mentioned before, there's no requirement that he has to have an accommodation for him to have a disability. Well, there has to be some notice that there's a disability. In order to say that you've been discriminated against because of a disability, the employer has to be aware that you are disabled. And so absent some notice from the employee to the employer of disability, how can there be a material question of fact regarding discrimination on the basis of disability? Sure. Well, I think the record is clear that both Mr. Eames and Mr. Jensen received notice of Mr. Bowden's restrictions and the problems he had with his back. It was from the medical providers and also from Mr. Bowden. Actually, now that I think about it, there is an email directly from Mr. Bowden. I apologize for that. It is in the record between 4 ER 425 through 45. And there is an email directly from Mr. Bowden. 425 through 45 is the notice to the employer that he's disabled? It's 20 pages long? Well, I'm trying to find the specific page, and I will grab that for you right now. There's an email from Mr. Bowden providing them with an update about the issues that he was having and the status of things. So there's a work status report from June. He talks about sacral lytic joint sprain. I'm sorry, it's 4 ER 444 where he directly emails Mr. Jensen about the issues he had, his joint sprain, the injections, and that it would take a day or two before he had the full effect of the injection. So that's certainly in the record as well. Is the word unable to work or disabled or anything along that line that would inform the employer of a disability? Informing the employer of the impairment, how it's coming along, how the treatment is doing, that is not sufficient to apprise the employer that you are disabled. So is this the strongest evidence you have of the notice to the employer of disability? I think all of the information that was provided to the employer from the medical provider and from Mr. Bowden are strong evidence that they were informed about his disability. And the reason I say that is because there's case law, and I don't have it with me right now, and I apologize, but there's case law specifically stating that you don't need magic words to invoke your right under the ADA. But you have to somehow convey the sentiment that you are disabled or unable to work or need accommodation. There has to be some communication to the employer to put the employer on notice that there is a disability. So I'm not saying that magic words are required, but what I am saying is that I don't see in the record where there was communication from Mr. Bowden to his employer in any way that he was disabled. And I know that you disagree with that, but you can move on to sum up because you're way over your time. Yeah, absolutely. And just to sum everything up, we believe that the district court's decision should be reversed in full and the case be remanded for trial. Thank you. All right, thank you. Thank you to both counsel for your helpful arguments. The case just argued is submitted for decision by the court. Our final case on calendar for argument today.
judges: RAWLINSON, LEE, Kennelly